# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

NICHOLAS R. HERNANDEZ,

    Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,[1]

    Defendant.

_____/

Case No. 1:18-cv-00895-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On June 29, 2018, Plaintiff Nicholas R. Hernandez ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on June 20, 2019). He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

Plaintiff was born on June 19, 1995 and obtained a General Educational Development (GED) certificate. (Administrative Record ("AR") 22, 106, 120, 684.) Plaintiff previously received SSI benefits based on disability as a child. (AR 16.) On October 18, 2012, Plaintiff filed claim for SSI payments as an adult, alleging disability beginning on July 16, 2012 due to mental health symptoms, including schizophrenia, depression, and anxiety. (AR 21, 120–21, 246–55, 279–80, 328.)

### A. Relevant Medical Evidence[3]

#### 1. Treating Physician Veena Doddakashi, M.D.

From ages 4 to 15, Plaintiff lived with his father, stepmother, and six other children. Plaintiff witnessed domestic violence between his father and stepmother, was exposed to sexual content, and was reportedly raped by his stepbrother. (AR 481, 574.) He returned to his mother's care in 2011. (AR 481, 574.) In 2012, Plaintiff was hospitalized several times for severe depression, severe paranoia, anger, and mood lability. (AR 552, 554, 567, 568–69, 586.) While hospitalized, he was diagnosed with schizophrenia. (AR 554.)

In February 2013, Plaintiff presented Dr. Doddakashi for evaluation following a recent hospitalization. (AR 542–43.) Plaintiff reported having been hospitalized for wanting to hurt his mother because she was "messing with [his] head." (AR 542.) At the hospital, Plaintiff's medications were changed. (AR 542.) Plaintiff's mother reported that he was "doing better" since his change in medications. (AR 542.) Plaintiff stated he was calmer and felt no aggression toward his mother or others. (AR 542.) He denied suicidal or homicidal ideations. (AR 542.) Dr. Doddakashi noted Plaintiff's mental status examination was normal. (AR 542.) Plaintiff received individual and group therapy from February to August 2013. (AR 489–519.)

///

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)

[3] As Plaintiff alleges that that ALJ erred in three ways: (1) he did not properly consider whether Plaintiff's impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) his credibility determination is deficient; and (3) he improperly rejected third-party lay testimony. Accordingly, only evidence relevant to these arguments is set forth below.

### 2. Kern County Mental Health Department

In August 2013, Plaintiff presented to Kern County Mental Health Department for an assessment. (AR 574–85.) He reported last having suicidal ideations in December 2012, which was "due to the wrong antidepressant." (AR 578.) Once his medication was change he reported no longer having those thoughts. (AR 578.) Plaintiff's mental status examination showed guarded attitude and depressed, anxious, hopeless, and worried mood. (AR 579.) The rest of the exam was normal/unremarkable. (AR 580.) Plaintiff was diagnosed with posttraumatic stress disorder (PTSD) and major depression. (AR 582.)

Plaintiff attended a follow up appointment in October 2013. (AR 601.) He reported being stable on his current medications and denied side effects, hallucinations, and paranoid delusions. (AR 596.) Plaintiff was noted to have "much improved" in response to treatment. (AR 599.) In November 2013, Plaintiff stated that his "mood and anxiety got better on medication" but that he still has difficulty trusting people and "got suspicious sometimes." (AR 601.) He denied side effects, hallucinations, delusions, and suicidal and homicidal ideations. (AR 601.) Plaintiff was noted to be in "partial remission on medication." (AR 605.) His mental status examination was normal/unremarkable. (AR 602–03.)

In January 2014, Plaintiff established care with a new provider at Kern County Mental Health Department. (AR 608–15.) He reported taking all of his medications and experiencing no adverse effects from them. (AR 608.) Plaintiff denied hallucinations and suicidal and homicidal ideations. (AR 608.) The treatment provider noted that Plaintiff "seems to be doing not so bad as to the combination of psychotropic medications he is on," he "doesn't sound irritable or despondent about the whole situation" but "may be anxious a bit," and he "[o]verall . . . seems to be doing fine." (AR 610.) From March to June 2014, Plaintiff "seem[ed] to be doing fine" and exhibited a "[f]air to [g]ood response to [p]sychopharmacology and [p]sychotherapy." (AR 558, 660, 665, 667, 672, 674, 679, 681.)

Plaintiff underwent an assessment in July 2014, where it was noted he "continues to suffer psychosis believing his father controls his thoughts." (AR 684.) It was also noted that Plaintiff "has made improvements in his mental health but continued individual therapy will be beneficial."

(AR 684.)  Plaintiff reported that he "seldomly has suicidal ideation" and had not had any suicidal thoughts in the past year.  (AR 686, 688.)  His mental status examination showed a depressed, anxious, and worried mood, but was otherwise normal/unremarkable.  (AR 689.)

Plaintiff presented for a follow up appointment on October 1, 2014, where he admitted he "decided to take himself off medication" and "asked to be placed back on medication" at his mother's insistence.  (AR 696.)  Plaintiff stated that due to his PTSD he "experiences problematic nightmare[s] at least every other day, that he gets "frustrated upon waking up because of this," and that "he tends to ruminate about it the whole day."  (AR 696.)  Plaintiff's mood was noted as dysphoric and sad, with intermittent eye contact, constricted affect, and paranoid ideation.  (AR 697.)  On October 29, 2014, Plaintiff reported that he has been taking his medications and "seems to be helped" by them.  (AR 703.)  He denied suicidal or homicidal ideations or experiencing hallucinations.  (AR 707.)

Plaintiff's last appointment at Kern County Mental Health Department occurred on January 7, 2015.  (AR 717.)  He reported that his medications helped and that he suffered no adverse effects from them.  (AR 717.)  Plaintiff stated there were "occasions when he still feels that irritability brought about by the thought, especially at night, that people around are controlling him."  (AR 717.)  His mood was anxious and euthymic, otherwise his mental status examination was unremarkable.  (AR 718.)  Plaintiff denied suicidal or homicidal ideations or experiencing hallucinations.  (AR 721.)

### 3.    Office of Jagdeep Garewal, M.D.

On January 21, 2015, Plaintiff established care with Dr. Garewal's office.  (AR 750–51, 772–73.)  He reported major depressive episodes, panic attacks, flashbacks, nightmares, irritability, and anger.  (AR 750.)  No psychosis, suicide attempts, or homicidal attempts or ideations were reported.  (AR 750.)  Plaintiff's mood was noted as "OK" and poor insight and judgment into and about his mental problems were observed.  (AR 751.)  Plaintiff was diagnosed with major depression, PTSD, and a panic disorder.  (AR 751.)  He was given a "sequential medication trials" for treatment of his symptoms.  (AR 751.)

In February and March 2015, Plaintiff reported that his symptoms had improved with

4

medication and that they were sporadic and less intense.  (AR 752, 754, 774, 776.)  His mood was "good," and he had no suicidal or homicidal ideations or hallucinations.  (AR 752, 754, 774, 776.)  Dr. Garewal noted "mild decline" in Plaintiff's attention, concentration, and memory.  (AR 754, 776.)

Plaintiff reported to Dr. Kimberly Hoffman in May 2015 that he was "feeling good" and Plaintiff's mother reported that he had not had any "episodes."  (AR 757, 778.)  Dr. Hoffman observed that Plaintiff was taking his medications with "good tolerance" and that he had "improved dramatically."  (AR 757, 778.)  Dr. Hoffman deemed Plaintiff's treatment outcome as "GOOD." (AR 757, 778.)  In June 2015, Dr. Hoffman noted that Plaintiff is "feeling very good and is very stabilized" on his medication regimen.  (AR 758, 779.)  Plaintiff reported in October 2015 that he "does not feel he is depressed anymore" and "no longer has outbursts of anger."  (AR 759, 780.)  His medication was decreased.  (AR 760, 780.)

In December 2015, Plaintiff presented to Dr. Hoffman with complaints of explosive anger, irritability, and "being scared he could hurt someone."  (AR 761, 782.)  His mood was reported as "sad."  (AR 761.)  Plaintiff also stated he does not feel rested.  (AR 761, 782.)  Dr. Hoffman re-adjusted Plaintiff's medication.  (AR 761, 782.)  Later than month, Plaintiff noted improvement and that he was no longer having hallucinations.  (AR 783.)

At a follow up appointment with Dr. Hoffman in February 2016, Plaintiff reported that he was "doing better."  (AR 764, 784.)  His mental status examination showed normal cognitive functioning for reasoning and logic, and mild decline in attention, concentration, and memory.  (AR 764, 784.)  Dr. Hoffman noted Plaintiff "has improved and is stabilized" on his medication regimen. (AR 764, 784.)  She further noted that Plaintiff "feels he has stopped worrying about everything." (AR 764, 784)  In April 2016, Plaintiff reported mood swings and anger but that he was no longer anxious.  (AR 765, 785.)  Dr. Hoffman observed that "ongoing medication monitoring and adjustments are still needed." (AR 765, 785.)

Dr. Hoffman evaluated Plaintiff in July 2016 and noted he had improved.  (AR 771.)  Plaintiff himself reported "I'm doing good now."  (AR 771.)  Dr. Hoffman stated that Plaintiff is "stabilized and no longer agitated or having [visual hallucinations] or [auditory hallucinations]."

(AR 771.)

### 4. State Agency Physician B. Smith, M.D.

On April 3, 2014, B. Smith, M.D., a State psychiatric consultant, reviewed Plaintiff's medical records and opined that Plaintiff had mild limitations in activities of daily living and maintaining concentration, persistence or pace. (AR 632.) Dr. Smith further opined that Plaintiff moderate difficulties in social functioning. (AR 632.) Dr. Smith found that Plaintiff did not meet any of the "C" criteria for categories 12.04 and 12.06 under 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 624, 633.) Dr. Smith concluded that Plaintiff is capable of performing unskilled tasks with limited public contact. (AR 637.)

## B. Plaintiff's Mother's Statement

On April 7, 2014, Plaintiff's mother Lydia Vasquez completed a Third-Party Adult Function Report. (AR 316–24.) Ms. Vasquez reported that she spends every day with Plaintiff except when he's at school. (AR 316.) She states that Plaintiff "gets depressed at times off and on," has a "hard time trusting others," and "thinks people are after him at times." (AR 316.) According to Ms. Vasquez, Plaintiff "cannot sleep at times" and "thinks a lot [a]bout his past." (AR 317.) Ms. Vasquez reported that Plaintiff needs reminders to take his medication and needs encouragement to perform household chores due to his depression. (AR 318–19.) Plaintiff "has issues with trust" and "isolates himself at times." (AR 321.) According to Ms. Vasquez, Plaintiff's "trust issues" affect his ability to talk to people. (AR 321.) Ms. Vasquez reported Plaintiff "forgets a lot," "has trouble completing things," and his "concentration is interrupted by past thoughts/fears others will get him at times." (AR 321.) Plaintiff can pay attention "for about [five] minutes" before he sometimes "drifts off." (AR 321.) According to Ms. Vasquez, Plaintiff is "shaky" on spoken instructions and "[d]oesn't like them." (AR 321.) Plaintiff "doesn't handle stress well," as he "gets agitated and wants to isolate himself." (AR 322.) Mr. Vasquez stated that he gets medication side effects "often" and experiences mood swings "daily." (AR 323.) Plaintiff has "anxiety attacks" if his medication is not taken and "needs monitoring." (AR 323.)

## C. Administrative Proceedings

The Commissioner reviewed Plaintiff's case and on January 29, 2014, determined he was

6

no longer disabled as of January 1, 2014. (AR 134–37.) Plaintiff requested reconsideration of this determination on February 5, 2014. (AR 138–39.) Following a hearing before a disability hearing officer (AR 140–59), reconsideration was denied on June 2, 2014 (AR 160–62).

Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 166–95.) Plaintiff appeared without counsel and testified before the ALJ at hearings held on January 21, 2016, May 27, 2016, and September 15, 2016. (AR 19–119.) Plaintiff's mother also testified at the January and May 2016 hearings. (AR 50–119.)

### 1. Testimony at the January 2016 Hearing

Plaintiff and his mother Ms. Vasquez appeared and testified at the first hearing. (AR 87–119.) Plaintiff testified that he was currently enrolled in Bakersfield College and that he had taken three classes the previous semester. (AR 104.) Plaintiff stated he received no special accommodations for his studies at Bakersfield College. (AR 105.) He also took classes in the Spring 2015 semester and received his GED from an adult school. (AR 106.) Plaintiff stated that he passed the written examination for a driver's license but had yet to take the road test. (AR 107.)

Plaintiff could not remember when he moved to his current address. (AR 102–03.) He testified he uses a computer daily, performed household chores, and also goes to the grocery store (AR 108–110.) Plaintiff testified has no difficulty grocery shopping by himself. (AR 110-11.)

Plaintiff's mother testified that Plaintiff has had "a journey on finding the right medication to get him stable to this point." (AR 113.) She stated that she has to remind Plaintiff to take his medication and, if he forgets, he exhibits anxiety or outbursts. (AR 113.)

Following testimony from a vocational expert ("VE"), the ALJ continued the hearing to allow Plaintiff to supplement the record. (AR 95–102, 114–118.)

### 2. Testimony at the May 2016 Hearing

At the second hearing, Plaintiff and his mother appeared and testified. (AR 50–85.) Plaintiff testified that, since the first hearing, he worked at a restaurant for a week, but was let go because the restaurant could not afford to pay him. (AR 55.) Plaintiff stated that he took three courses at Bakersfield College during the previous semester. (AR 56-57.) Plaintiff testified that

he received his driver's license and had driven since the first hearing.  (AR 60.)  Since the first hearing, Plaintiff has been looking for jobs as a clerk in a retail store.  (AR 61–62.)  He testified that he gets angry every other day and gets into arguments with his family.  (AR 62–63.)  According to Plaintiff, his anger would make it difficult for him to work full-time.  (AR 62.)

Plaintiff's mother testified that Plaintiff "zones out" while driving.  (AR 71.) She testified that Plaintiff performs household chores, but she has to remind him.  (AR 72.)  According to his mother, Plaintiff has a "hard time receiving criticism a lot and being shown the correct way to do things without getting offended" and that he shouts and "slams doors" as a result.  (AR 75.)  She testified that he would possibly "just walk out" of a job if he disagreed with his supervisors.  (AR 76.)  Plaintiff's mother testified that he could not perform full-time work because he gets "really sleepy" at night.  (AR 83.)

After testimony by a medical expert, the ALJ continued the hearing to allow Plaintiff to supplement the record.  (AR 78–85.)

### 3. Testimony at the September 2016 Hearing

At the third hearing, Plaintiff testified without his mother.  (AR 29–49.)  He stated that he has continued to take classes at Bakersfield College.  (AR 34.)  According to Plaintiff, his limitations regarding full-time work remain the same.  (AR 44.)  Plaintiff testified that gets anxiety at night and he would "rather work in the morning, mornings or afternoons."  (AR 47.)  When asked by the ALJ if Plaintiff believed he could perform a job cleaning hospital rooms during the day, with other people around to consult if he had questions or problems, Plaintiff responded that he would "consider it[,] maybe."  (AR 48.)

### 4. Medical Expert's Testimony at the September 2016 Hearing

Brady Dalton, Psy.D., a psychiatric expert, testified at the third hearing as a medical expert.  (AR 35–42.)  Dr. Dalton testified that since January 1, 2014, Plaintiff had the medically determinable impairments of major depression and PTSD.  (AR 36.)  Dr. Dalton noted that although Plaintiff had been diagnosed with schizophrenia in adolescence, it appeared to be ameliorated with medications and no psychosis was reflected in the medical record since January 2014. (AR 36.)  Dr. Dalton found that Plaintiff did not meet the criteria of the Listings.  (AR 38.)

8

He opined that Plaintiff had mild limitations in activities of daily living and social functioning, given his participation in college classes, but moderate limitations in concentration, persistence pace. (AR 38-39.) Dr. Dalton opined that Plaintiff's "adaptive functioning," which included "consistent college participation," did not suggest any impairment in managing adversity, dealing with stress, and overcoming change. (AR 40.) Dr. Dalton opined that Plaintiff could complete a normal workday, could complete simple repetitive tasks, and could occasionally handle detailed and complex tasks. (AR 40–41.) Dr. Dalton also opined that Plaintiff could work with the public two-thirds of the workday, but had no limitations interacting with co-workers or supervisors. (AR 41–42.)

### 5.      Vocational Expert's Testimony at the September 2016 Hearing

A VE testified at the third hearing that Plaintiff had no past work. (AR 44–45.) The ALJ asked the VE to consider a person of Plaintiff's age and education, and with no past work, who has no exertional, postural, or manipulative limitations. (AR 45.) The VE was also to assume this person was capable of constant simple repetitive tasks and occasional detailed or complex tasks. (AR 45.) The person should also have no more than frequent interaction with the public and can maintain concentration over job duties for a continuous two-hour period. (AR 45.) The VE testified that such a person could perform work as a hand packager, Dictionary of Operational Titles ("DOT") code 920.578-018, at a medium exertional level and specific vocational preparation (SVP)[4] level 2, of which there are 264,000 jobs in the national economy. (AR 45–46.) The VE also testified that such a person could perform work as a cleaner II, DOT code 919.687-014, at a medium exertional level and SVP 1, for which there are 200,000 jobs, and could also perform work as a janitor, DOT code 381.687-014, at a heavy exertional level and SVP 2, for which there are 294,000 jobs in the nation. (AR 46.)

### D.      The ALJ's Decision

In a decision dated October 3, 2016, the ALJ found that Plaintiff was not disabled. (AR

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

16–23.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 14–23.)  Plaintiff attained age 18 on June 19, 2013 and was notified that he was found no longer disabled as of January 1, 2014, based on a redetermination of disability under the rules for adults who file new SSI applications (step one).  (AR 18.)  At step two, the ALJ found Plaintiff's following impairments to be severe: affective and anxiety disorders.  (AR 18.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 18– 20.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is cognitively capable of constant simple repetitive tasks; and occasional detailed complex tasks; with no more than frequent interaction with the public; and can maintain concentration over job tasks for a continuous 2 hour period.

(AR 20.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to produce the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not credible to the extent they are inconsistent with the residual functional capacity assessment."  (AR 21.)

The ALJ determined Plaintiff had no past relevant work (step four), but that Plaintiff was not disabled because, given his RFC, he could perform a significant number of other jobs in the local and national economies, specifically hand packager, cleaner II, and janitor (step five).  (AR

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

22–23.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 1, 2018. (AR 1–5.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III.    LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be

'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in three ways. First, Plaintiff claims the ALJ erred at step three in in failing to consider the application of Listing 12.15 to Plaintiff's impairments. (*See* Doc. 14 at 9–15.) Second, Plaintiff asserts that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's testimony and statements regarding his subjective complaints. (*See id*. at 15–21.) Finally, Plaintiff contends that the ALJ erred in improperly disregarding

Plaintiff's mother's testimony.  (*See id*. at 21–24.)

Defendant counters that Listing 12.15 does not apply because its effective date postdates the ALJ's decision, and that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and his mother's similar statements. (*See* Doc. 15 at 8–15.)

## A.    Plaintiff Has Failed to Show Error at Step Three

### 1.    Legal Standard

At the third step of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Tackett*, 180 F.3d at 1098.  The Listings are "designed to operate as a presumption of disability that makes further inquiry unnecessary."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  Conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs."  *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir.1995).

### 2.    Analysis

On September 26, 2016, the Commissioner published final rules that included significant revisions to the Listings criteria used to evaluate claims involving mental disorders.  *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R.).  The changes included the addition of Listing 12.15, which focuses on "Trauma–and stressor-related disorders," including PTSD.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(B)(11), 12.15 (2017).  Listing 12.15 became effective on January 17, 2017.  *See id*.; *Revised Medical Criteria for Evaluating Mental Disorders*, 2016 WL 5341732 at *66138.

The ALJ issued his decision on October 3, 2016, over three months before Listing 12.15 became effective on January 17, 2017.  The ALJ's failure to consider the application of Listing 12.15 to Plaintiff's application was therefore not erroneous.  *See Revised Medical Criteria for Evaluating Mental Disorders*, 2016 WL 5341732, at *66138 ("The prior rules will continue to apply until the effective date of these final rules.").  *See also Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016) ("Absent express direction from Congress to the contrary, the ALJ should have

14

continued to evaluate L.M.'s application under the listings in effect at the time she filed her application."); *Frost v. Barnhart*, 314 F.3d 359, 371 (9th Cir. 2002) (Beezer, J., concurring in part and dissenting in part) (finding correct listing to apply on remand was the one in effect at the time of the claimant's hearing). *Accord Stovall v. Colvin*, CIVIL ACTION NO. 16-17475, 2017 WL 8785560, at *7 (E.D. La. Sept. 22, 2017) (finding that Listing 12.15 did not apply because claimant's claim was not pending on January 1, 2017).

Further, the Court cannot apply Listing 12.15 retroactively to assess whether the findings set forth in the ALJ's final decision are supported by substantial evidence. In general, "[r]etroactivity is not favored in the law" and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires the result." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). An agency does not have the authority to create retroactive rules unless it has express authority by Congress to do so. *See id*. *See also Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1083 (9th Cir. 2002) ("Regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations requires this result.").

Under the Social Security Act, Congress gave the Commissioner the "full power and authority to make rules and regulations and to establish procedures . . . which are necessary to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a). This provision does not grant the Commissioner express statutory authority to retroactively promulgate rules. *See Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1134 (N.D. Cal. 2001) ("While the delegation of rule-making authority to implement the Social Security Act is broad, the lack of an express grant of authority to engage in retroactive rulemaking precludes the agency from doing so, at least absent a substantial justification not presented here."). Likewise, the Revised Medical Criteria do not purport to apply Listing 12.15 retroactively to a case where a final agency decision has been made. *Revised Medical Criteria for Evaluating Mental Disorders*, 2016 WL 5341732, at *66138 ("The prior rules will continue to apply until the effective date of these final rules. When the final rules

become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date."); *see also id*. at n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

The Court's evaluation of the ALJ's determination at step three is therefore limited to the listings that were effect at the time. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 264 (1994) ("[A] court is to apply the law in effect at the time it renders its decision") (quoting *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974)). *See also, e.g, Hart v. Berryhill*, Civil Action No. 17-cv-00590-PAB, 2019 WL 1434619, at *3 (D. Colo. Mar. 31, 2019) (declining to apply Listing 12.15 retroactively to the ALJ's decision); *Rivera v. Colvin*, Civil Case Number 3:15-CV-01701 (VLB), 2017 WL 1005766, at *4 (D. Conn. Mar. 15, 2017) (same). As Plaintiff does not challenge the ALJ's application of Listings 12.03, 12.04, or 12.06 to his impairments (*see* AR 18–20), he has failed to show that the ALJ committed error at step three.

**B.      The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

### 2. Analysis

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (AR 21.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (AR 21.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Plaintiff challenges the ALJ's finding that Plaintiff's credibility was undermined by evidence showing that Plaintiff's impairments were controlled by medications. (AR 21.)

Contrary to Plaintiff's assertion (Doc. 14 at 19), the ALJ summarized Plaintiff's testimony that he is unable to work because of "persistent mental health symptoms," including suicidal ideation and audio hallucinations. (AR 21.) However, as the ALJ also sets forth in his decision, the record is replete with instances showing medication improved Plaintiff's symptoms

significantly.[6] (AR 21.)  For example, in January 2014, Plaintiff denied hallucinations and suicidal and homicidal ideations.  (AR 608.)  His treatment provider noted that Plaintiff "seems to be doing not so bad as to the combination of psychotropic medications he is on," he "doesn't sound irritable or despondent about the whole situation" but "may be anxious a bit," and he "[o]verall . . . seems to be doing fine."  (AR 610.)  From March to June 2014, Plaintiff "seem[ed] to be doing fine" and exhibited a "[f]air to [g]ood response to [p]sychopharmacology and [p]sychotherapy."  (AR 558, 660, 665, 667, 672, 674, 679, 681.)  After resuming his medications in October 2014, Plaintiff reported that he "seems to be helped" by his medications and again denied suicidal or homicidal ideations or experiencing hallucinations.  (AR 703, 707.)

In February and March 2015, Plaintiff reported that his symptoms had improved with medication and that they were sporadic and less intense.  (AR 752, 754, 774, 776.)  His mood was "good," and he had no suicidal or homicidal ideations or hallucinations.  (AR 752, 754, 774, 776.)  Plaintiff reported to Dr. Hoffman in May 2015 that he was "feeling good" and Plaintiff's mother reported that he had not had any "episodes."  (AR 757, 778.)  Dr. Hoffman observed that Plaintiff was taking his medications with "good tolerance" and that he had "improved dramatically."  (AR 757, 778.)  Dr. Hoffman deemed Plaintiff's treatment outcome as "GOOD."  (AR 757, 778.)  In June 2015, Dr. Hoffman noted that Plaintiff is "feeling very good and is very stabilized" on his medication regimen.  (AR 758, 779.)

Plaintiff stated in October 2015 that he "does not feel he is depressed anymore" and "no longer has outbursts of anger."  (AR 759, 780.)  At a follow up appointment with Dr. Hoffman in February 2016, Plaintiff reported that he was "doing better."  (AR 764, 784.)  Dr. Hoffman noted Plaintiff "has improved and is stabilized" on his adjusted medication regimen.  (AR 764, 784.)  She further noted that Plaintiff "feels he has stopped worrying about everything."  (AR 764, 784)  Dr. Hoffman evaluated Plaintiff in July 2016 and again noted he had improved.  (AR 771.)  Plaintiff himself reported "I'm doing good now."  (AR 771.)  Dr. Hoffman stated that Plaintiff is "stabilized and no longer agitated or having [visual hallucinations] or [auditory hallucinations]."  (AR 771.)

---

[6] The ALJ also relied on the opinion of the medical expert Dr. Dalton, who opined that Plaintiff's symptoms seemed adequately controlled by medications (AR 21), as exhibited by Plaintiff's ability to attend classes at Bakersfield College.  (AR 34, 56–57, 104.)  Plaintiff does not challenge the ALJ's treatment of Dr. Dalton's opinion.

In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when his or her symptoms can be controlled by medication. *See* 20 C.F.R. § 416.929(c)(3)(iv); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). Here, there is substantial evidence in record, as set forth above, that Plaintiff is adequately functional when medicated.[7] Plaintiff's improvement with medication is therefore a clear and convincing reason for discounting Plaintiff's subjective symptom testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Hives v. Colvin*, No. 2:14-cv-2953-CKD, 2016 WL 336200, at *11 (E.D. Cal. Jan. 28, 2016) (finding the ALJ's determination that the plaintiff's impairments were well-controlled with medication was a clear and convincing reason for discounting the plaintiff's subjective claim that her impairments caused her to be disabled). *See also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to medication).

**C.     The ALJ's Rejection of Plaintiff's Mother's Lay Testimony is Harmless Error**

**1.     Legal Standard**

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must consider, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis*, 236 F.3d at 511; *Stout*, 454 F.3d at 1053; *see also* 20 C.F.R. § 416.913(d)(4). In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if she does "not clearly link [her] determination to those reasons." *Lewis*, 236 F.3d at 512. An ALJ may reject lay witness testimony if it is inconsistent with the record. *See, e.g., id.* at 511-12 (rejecting lay witness testimony conflicting with the plaintiff's testimony and the medical record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (rejecting lay witness testimony conflicting with the medical record). The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642

---

[7] The ALJ also relied on the opinion of the medical expert Dr. Dalton, who opined that Plaintiff's symptoms were sufficiently controlled by medications (AR 21–22), as exhibited by Plaintiff's ability to attend classes at Bakersfield College (AR 34, 56–57, 104). Plaintiff does not challenge the ALJ's treatment of Dr. Dalton's opinion.

(9th Cir. 1982). Further, "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

### 2. Analysis

Here, the ALJ failed to give any reasons, germane or otherwise, for giving only "some weight" to Ms. Vasquez's testimony.[8] (AR 16.) This was error. *See Molina*, 674 F.3d at 1115 ("[U]nder our rule that lay witness testimony 'cannot be disregarded without comment,' the ALJ erred in failing to explain her reasons for disregarding the lay witness testimony, either individually or in the aggregate.") (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). However, as in *Molina*, the error here is also harmless. *See id.* (finding the error in failing to explain reasons for disregarding lay testimony harmless). In that case, the Ninth Circuit stated that where lay testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with the Court's prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se. *Id.* at 1117.

Here, the Court notes that the lay witness provided testimony similar to that of Plaintiff, *i.e.*, both Plaintiff and Ms. Vasquez testified that Plaintiff's depression, forgetfulness, anger, and anxiety symptoms preclude his ability to work full time. (*See, e.g., compare* AR 328 (Plaintiff stated his depression is worse and he "stay[s] away from people more.") *with* AR 316, 318–319, 321–22 (Ms. Vasquez stated Plaintiff "gets depressed at times off and on," needs encouragement to perform household chores due to his depression, and "isolates himself at times."); *compare* AR 102–03 (Plaintiff testified he could not remember when he had recently moved to his current address) *with* AR 72, 113, 321 (Ms. Vasquez stated Plaintiff "forgets a lot" and she has to remind

---

[8] In a footnote to his decision, the ALJ stated the following regarding Ms. Vasquez's testimony:

> [Plaintiff's] mother appeared at the January hearing and testified that [Plaintiff] was forgetful and had to be reminded to take his pills. I gave this testimony some weight in [sic] assigned [Plaintiff] a moderate level of impairment in concentration, persistence and pace, and a mild limitation in activities of daily living. It is also consistent with a statement she submitted, Ex. 7E, I give that statement some weight as well.

(AR 16 n.1.)

Plaintiff to take his medication or perform household chores.); *compare* AR 62–63 (Plaintiff testified that he gets angry every other day and gets into arguments with his family) *with* AR 75, 113, 322 (Ms. Vasquez stated Plaintiff "gets agitated" when under stress, exhibits "outbursts," and will shout and "slam[] doors" when criticized or corrected.); and *compare* AR 47 (Plaintiff testified he experiences anxiety at night) *with* AR 113, 323 (Ms. Vasquez stated Plaintiff has "anxiety attacks" if his medication is not taken.).   As previously discussed, the ALJ properly rejected Plaintiff's testimony about the severity of his limitations on the grounds that the claims were inconsistent with his improvement with medication.   (AR 21–22.)   Like *Molina*, here, the lay testimony did not describe any limitations beyond those Plaintiff himself described, which the ALJ discussed and rejected based on a well-supported, clear and convincing reason.   *Molina*, 674 F.3d at 1122.

Moreover, it is unclear what functional limitations Plaintiff believes Ms. Vasquez's testimony established that were not accounted for in the ALJ's RFC assessment.   Plaintiff points to Ms. Vasquez's testimony regarding Plaintiff's forgetfulness, anger, depression, and attention span (*see* Doc. 14 at 23–24), but the ALJ's RFC finding incorporated such difficulties by limiting Plaintiff to occasional detailed complex tasks and to frequent interaction with the public and finding Plaintiff capable of maintaining concentration for a continuous two-hour period.   (*See* AR 20.)   In sum, the error in assigning Ms. Vasquez's testimony is harmless since it would not change the ultimate result.   *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout*, 454 F.3d at 1055 (error harmless where it is non-prejudicial to claimant or irrelevant to the ALJ's ultimate disability conclusion).

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.   The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

1   Dated:    **June 28, 2019**                              /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28